**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRENDA HERNDON, individually and on behalf of all others similarly situated, | : : : | No. 4:15-cv-01202 |
| Plaintiff(s), | : | (Judge Brann) |
| | : | CLASS ACTION |
| v. | : | |
| | : | |
| GREEN TREE SERVICING LLC, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**March 31, 2016**

## I.    BACKGROUND

On August 18, 2000, Plaintiff Brenda Herndon entered into a Retail Installment Contract and Security Agreement with Chesapeake Mobile Homes, Inc. to finance the purchase of a manufactured home in the amount of $28,007.00.[1] Plaintiff's loan was secured by, among other assets, her new home itself.[2]

The purchase agreement contained a broad arbitration clause. That clause read as follows:

---

[1]  ECF No. 10 at 7.
[2]  Id.

**ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:**

**a. Dispute Resolution.** Any controversy or claim between or among you [Seller] and me [Herndon] or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if required by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by a judge without a jury, as described below. **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.**

**b. Arbitration.** Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the [AAA] also shall apply. The arbitrator(s) shall follow the law and shall give effect to the statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice.[3]

In addition to these broad arbitration provisions, the agreement between

---

[3] ECF No. 12 Ex. 1 at 7.

Plaintiff and Chesapeake also contained a form "Holder Notice" provision, which read:

NOTICE

ANY HOLDER OF THIS CONSUMER CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.[4]

Upon execution of the purchase agreement, Chesapeake assigned the agreement and all of its associated rights under the agreement to GreenPoint Credit, LLC.[5] Specifically, the agreement included the following passage: "For value received, [Chesapeake] hereby assigns to [GreenPoint] all its rights, title and interest in this Contract and the property which is the subject matter hereof and authorizes [GreenPoint] to do everything necessary to collect and discharge same."[6] Later, on October 8, 2004, Defendant Green Tree Servicing, LLC, purchased certain GreenPoint's servicing portfolio of manufactured housing loans, which included the loan at issue here.[7]

Thereafter, Plaintiff admits that she "fell behind in her payments."[8]

---

[4] ECF No. 12 Ex. 1 at 8.
[5] Id.
[6] Id.
[7] Id. at 9.
[8] ECF No. 11 at 7.

Defendant attempted to collect on Plaintiff's past-due debt pursuant to the terms of the original purchase agreement. Plaintiff thereafter filed a putative class action against Defendant in this Court, alleging violations of the Telephone Consumer Protection Act.

Pursuant to the broad arbitration provisions in Plaintiff's purchase agreement, Defendant sought to compel arbitration and to stay proceedings.[9] Because the arbitration clause in the original purchase agreement is valid and enforceable by Defendant and because it applies to the instant dispute, Defendant's Motion to Compel Arbitration and Stay Proceedings is granted.

## II.   LAW

Defendant seeks to compel arbitration and stay proceedings pursuant to the Federal Arbitration Act ("FAA").[10] Section 2 of the FAA, which governs the validity of arbitration agreements, mandates that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The primary purpose behind the FAA was to dismiss with "ancient judicial hostility to arbitration," and to "ensure that 'private agreements to arbitrate are

---

[9]  ECF No. 8.
[10]  9 U.S.C. § 1 et seq.

enforced according to their terms.'"[11] In enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[12] Accordingly, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."[13] The FAA "thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to their terms."[14]

Given this sweeping policy in favor of arbitration, "[a] motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."[15] If "the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration

---

[11]  Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 56 (1995) (internal quotations omitted). Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010) (quoting Volt Info. Sciences, Inc. v. Board of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989)).

[12]  Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).

[13]  Volt, 489 U.S. at 475–76.

[14]  Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010).

[15]  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (Alito, J.).

without considering the merits of the dispute."[16] "In making this determination, the court must operate under a 'presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with <u>positive assurance</u> that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"[17]

Once the court has found that the arbitration agreement sought to be enforced is valid and that the disputed issues falls within that agreement's scope, the court must enter a mandatory stay of the proceedings according to Section 3 of the FAA. That provision states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

"The purpose of Section 3, in particular, is to guarantee that a party who has secured the agreement of another to arbitrate rather than litigate a dispute will reap the full benefits of its bargain."[18] "Section 3 is drafted to fit the paradigm situation in which a motion for a stay pending arbitration occurs—a plaintiff brings suit on a

---

[16] <u>PaineWebber Inc. v. Hartmann</u>, 921 F.2d 507, 511 (3d Cir. 1990) (Becker, J.).

[17] <u>Id.</u> (quoting <u>AT & T Technologies, Inc. v. Communications Workers of America</u>, 475 U.S. 643, 650 (1986)) (second internal quotation omitted).

[18] <u>Mendez v. Puerto Rican Int'l Companies, Inc.</u>, 553 F.3d 709, 711 (3d Cir. 2009).

claim involving an issue it is obligated to arbitrate under an agreement in writing

with a defendant and that defendant seeks to stay the litigation pending

arbitration."[19]"The defendant is entitled to a mandatory stay of the 'suit or

proceeding' in such circumstances providing it 'is not in default in proceeding with

such arbitration.'"[20]

## III.   ANALYSIS

For the foregoing reasons, Defendant's Motion to Compel Arbitration and

Stay Proceedings is granted.

> ### A.   Plaintiff's Primary Argument—That The Court May Not Rely On The Text Of The Arbitration Agreement Because Defendant Failed To Attach It To Its Opening Brief—Is Tertiary To The Main Issue, Was Made In Bad Faith, And Is Ultimately Unavailing.

Plaintiff first contends that this Court should discount the existence of the

arbitration agreement because Defendant failed to attach an original copy to its

opening brief. That is an exceptionally picayune manner in which to begin one's

argument. Basing one's case primarily on a technicality evidences to the trier of

fact a dire lack of confidence in the true merits of the underlying issue.

Equally as troubling was the revelation that defense counsel had made aware

and provided copies of the pertinent agreement to Plaintiff's counsel as a

consequence of Defendant's efforts to satisfy Local Rule 7.1, which mandates that

---

[19] Id. at 712.
[20] Id.

parties supply to the Court a certificate of concurrence or nonconcurrence, as appropriate upon the filing of their motion. I therefore cannot consider Plaintiff's primary argument as having been made in good faith.

In any event, Plaintiff proceeded to acknowledge the existence and the contents of the agreement despite her preliminary objections. In that manner, her evidentiary objection amounted to nothing more than a distraction from the Court's point of view. To that end, Defendant was rightly able to cure any purported evidentiary deficiencies in its papers simply by attaching copies of the agreements to its reply brief. Plaintiff's evidentiary objection effectively made a lot of fuss about nothing. For future reference, this Court would advise the parties to compare their relationship with the judges before whom they appear to that of a "credibility" bank account. By the time I reached the merits here, Plaintiff's counsel was already perilously close to bankruptcy.

**B.   Defendant Has Demonstrated The Existence Of A Valid Arbitration Agreement That Applies To The Instant Dispute, Thereby Requiring This Court To Compel Arbitration And Stay Any Further Proceedings.**

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."[21] A valid agreement to arbitrate exists here. The parties do not dispute that. What is disputed, however, is the extent to which

---

[21]   Trippe, 401 F.3d at 532.

this dispute falls within the scope of that agreement given Defendant's position as a nonsignatory to that document. As the law would have it, Defendant may step into the shoes of its predecessor-in-interest and enforce the agreement to arbitrate as against Plaintiff.

The Arbitration Clause at issue provides as follows:

**ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:**

**a. Dispute Resolution.** Any controversy or claim between or among you [Seller] and me [Herndon] or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if required by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by a judge without a jury, as described below. **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.**

**b. Arbitration.** Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the [AAA] also shall apply. The arbitrator(s) shall follow the law and shall give effect to the statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the

arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice.[22]

In addition to these broad arbitration provisions, the original agreement between Plaintiff and the original seller of the manufactured home also contains a form "Holder Notice" provision, which reads:

NOTICE

ANY HOLDER OF THIS CONSUMER CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.[23]

In contrast to these clear textual provisions, Plaintiff's primary contention as to the applicability of the agreement is that Defendant may not seek to enforce the arbitration provision because it was not an original signatory to the document. Predictably, this case is not the first time that the nonsignatory issue has arisen in the contractual context. In fact, it is not even the first time the issue has arisen involving similar arbitration clauses sought to be enforced by Defendant here. Instead, a clear path of legal precedent permits Defendant to exercise those rights

---

[22] ECF No. 12 Ex. 1 at 7.
[23] ECF No. 12 Ex. 1 at 8.

and remedies that its predecessor-in-interest bargained for during the agreement's formation.

"Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so."[24] Applying ordinary principals of contract law to a very similar arbitration agreement, the United States Court of Appeals for the Fifth Circuit in Sherer v. Green Tree Servicing LLC held that Green Tree was able to compel arbitration even though it had not been a signatory in the first instance.[25] "Indeed, without the Loan Agreement, there would be no loan for Green Tree to service, and no party argues to the contrary," the Fifth Circuit noted.[26] Importantly, in Sherer, the Plaintiff's claims arose "from Green Tree's conduct as Sherer's loan servicer" and therefore fell "within the terms of the Loan Agreement's arbitration clause."[27] The court therefore concluded that the plaintiff "ha[d] validly agreed to arbitrate with a nonsignatory, such as the loan servicer Green Tree."[28]

The plain text of the arbitration clause here mimics that found in the Sherer case. "Any controversy or claim between or among you [Seller] and me [Herndon] or our assignees" is subject to arbitration here, so long as the dispute "aris[es] out

---

[24] Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 382 (5th Cir. 2008)
[25] Id.
[26] Id.
[27] Id.
[28] Id.

of or relat[es] to" the initial purchase agreement. The instant dispute is covered by

that broad language. It is a claim between Herndon and an assignee of the

originating institution, and it clearly has arisen from the purchase agreement. Thus,

were the dispute only between Plaintiff and Chesapeake, this would be a rather

straightforward case, but as it turns out, that the dispute is now between Plaintiff

and Chesapeake's successor-in-interest makes little difference.

In discerning whether Defendant may step into the original seller's shoes as

its assignee or successor-in-interest, the parties seem to dispute the state contract

law applicable to this dispute. The Court is unconvinced that application of the law

of Maryland rather than that of Pennsylvania makes much difference here;

nevertheless, as Defendant correctly points out, the purchase agreement contains a

Maryland choice-of-law provisions, and so that is the law to which the Court must

turn.[29]

"Under Maryland law, an agreement to arbitrate disputes is enforceable if it

is a valid contract."[30] Accordingly, federal courts interpreting Maryland law have

held that where one party "is the assignee" as to "[another party's] debt," an

arbitration clause that covers "subsidiaries, affiliates, agents, employees,

---

[29]  See, e.g., Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007) ("Pennsylvania courts
      generally honor the intent of the contracting parties and enforce choice of law provisions in
      contracts executed by them.").

[30]  Grant-Fletcher v. Collecto, Inc., No. CIV.A. RDB-13-3505, 2014 WL 1877410, at *5 (D. Md.
      May 9, 2014).

predecessors in interests, successors, and assigns" is sufficient to permit an

assignee, such as a collection agency, to compel arbitration of an action arising out

of debt collection.[31] This result is unavoidable because "an assignment transfers all

of the assignor's rights and interests to the assignee."[32] For instance, an "assignee

of a mortgage loan agreement [can] invoke [the loan agreement's] arbitration

clause."[33] Thus, Maryland law permits a seller's assignee to invoke the original

sales agreement's arbitration clause.[34]

Plaintiff contends that she could have never surmised that a debt servicer

such as Defendant here would ever be party to the arbitration agreement when she

signed it. Instead, Plaintiff argues that the agreement could only ever be operable

between herself and other mobile home companies—the closed universe of parties

from which she could ever subjectively foresee drawing an assignee to

Chesapeake. That is a strained argument. When Plaintiff agreed to arbitrate "any

controversy or claim . . . arising out of or relating to" the purchase of her

manufactured home, any reasonable purchaser would have understood the scope of

such an agreement to extend to debt collection upon default of the purchase

---

[31] Id. at *5.
[32] Rota-McLarty v. Santander Consumer USA, Inc., No. CIV. WDQ-10-0908, 2011 WL 2133698, at *4 n.15 (D. Md. May 26, 2011) (citing James v. Goldberg, 256 Md. 520, 527, 261 A.2d 753, 757 (1970)).
[33] Rota-McLarty, 2011 WL 2133698, at *4 n.15 (citing Walther v. Sovereign Bank, 386 Md. 412, 418, 450, 872 A.2d 735, 739, 758 (2005)).
[34] Rota-McLarty, 2011 WL 2133698, at *4.

agreement's terms. As one other court has observed in a similar action, "Indeed, it is difficult to understand how Green Tree could be a servicer if there were no Note, and more importantly, how Green Tree could face statutory servicer liability if there were no Note to service. In light of this conclusion and strong federal policy favoring arbitration, it is appropriate to compel arbitration of the [Plaintiff's] claims."[35]

In addition, Plaintiff cites to law suggesting that an assignee should be unable to enforce a given contractual provision if enforcement of that provision post-assignment would work a "material change" on the existing party's duties. The Court perceives no "material change" having taken place when a purchase agreement is assigned to a servicing agency. Quite the opposite, as Plaintiff herself characterizes the legal transaction here, "substitution of a new party as holder of the right" precisely suggests that if the original party had the right to enforce the agreement to arbitrate in an effort to collect past due payments, then the existence of such a right now belongs to the Defendant.[36]

Plaintiff suggests to the contrary that her "risk with respect to the agreement significantly and materially increased" post-assignment.[37] She essentially claims that she was purchasing a home—legally, financing the purchase of a home via a

---

[35] Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1311 (11th Cir. 2005).
[36] ECF No. 11 at 17.
[37] Id. at 18.

security agreement—but did not foresee the prospect of debt collection following

past due payments. That argument strains credulity. To illustrate, Plaintiff suggests

that such momentous changes in her contractual obligations stem from her having

to deal with "a new company" that operates under "new policies and procedures."

If those changes were sufficient to engender a material hardship, then nearly every

commercial assignment would work a material change, rendering the terms of just

about any commercial agreement unenforceable. That rule would result in an

inefficiently low number of assignments occurring naturally in the marketplace.

Further, one might argue that Plaintiff's duty has not changed at all, let alone

in a material fashion. Under that contention, a contention to which Defendant hints,

Plaintiff's sole duty under the agreement was to make her payments on time,

regardless of the identity of the loan's ultimate servicer. Under that

characterization of the relationship, whatever changes the assignment might have

on the collection process should be immaterial to Plaintiff's continued obligation to

repay her debt. At no time, for instance, does Plaintiff contend that the assignment

ever accelerated her payments, altered her interest rate, or effected any other

change on her payment schedule or amount due. Suggesting that a mere

substitution of mortgage servicers causes a material change in a purchase

agreement leads this Court toward murky water into which it would rather not

tread.

Moreover, in the Court's view, a lurking issue unaddressed by Plaintiff's brief but nevertheless relevant to the determination of arbitrability here is Plaintiff's styling of her claim as a "putative class action." Despite Plaintiff having effectively waived the class arbitrability argument in this forum, I think it important to address that her filing this matter as a putative class action should have no bearing upon my decision to enforce the arbitration agreement at issue for several reasons.

First, as United States Supreme Court precedent prescribes, "[w]here contractual silence is implicated, 'the arbitrator and not a court should decide whether a contract [was] indeed silent on the issue of class arbitration,' and 'whether a contract with an arbitration clause forbids class arbitration.'"[38] Thus, recognizing this Court's limited jurisdiction and giving full effect to the parties' contractual bargain, I would construe any contentions as to the validity of class arbitration to fall within the domain of the arbitrator.

Second, as a textual matter, the very breadth of the arbitration clause ensures that this matter is rightly one to be disposed of by resort to arbitration. As emphasized earlier, the arbitration clause at issue provides for arbitration of "[a]ny

---

[38] Vilches v. The Travelers Companies, Inc., 413 F. App'x 487, 492 (3d Cir. 2011) (quoting Stolt-Nielsen, 559 U.S. at 679). See also Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451 (2003) (Breyer, J.) (plurality) (holding, upon analyzing an arbitration clause very similar to the one at issue here, that "[u]nder the terms of the parties' contracts, the question–whether the agreement forbids class arbitration–is for the arbitrator to decide").

controversy or claim between or among you and me or our assignees arising out of or relating to" the retail installment contract and security agreement. The breadth of that provision is sufficient to compel arbitration of this dispute, even given its characterization by Plaintiff as a putative class action. Namely, I would find that arbitration of the instant action is warranted by the text of the contested clause. This dispute, even when styled as a putative class action, qualifies as "<u>any</u> controversy or claim," because it has occurred "between <u>or among</u>" the parties-in-interest and because it in fact both "arise[s] out of" and "relat[es] to" the underlying purchase agreement.

Last, as a matter of practice, the status of Plaintiff's "putative" class is wholly incipient, and Plaintiff has failed to allege any facts in her Complaint or briefing plausibly suggesting the presence of similarly situated complainants. It would be entirely premature for the Court to allow Plaintiff's <u>pro forma</u> class-based characterization of her claims to forestall the parties' sweeping agreement to arbitrate. In essence and as a practical consideration, it would obviate the entire purpose and judicial preference for arbitration to permit a litigant to avoid arbitration proceedings simply by disguising through artful pleading an individual action as a class-based one where an otherwise broad arbitration agreement controls.

## IV.    CONCLUSION

Because the arbitration clause in the original purchase agreement is valid

and enforceable by Defendant and because it applies to the instant dispute,

Defendant's Motion to Compel Arbitration and Stay Proceedings is granted.

An appropriate Order follows.


BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge