IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENDA HERNDON, individually and on behalf of all others similarly situated, | : : : | No. 4:15-cv-01202 |
| Plaintiff(s), | : : | (Judge Brann) |
| v. | : : | CLASS ACTION |
| GREEN TREE SERVICING LLC, | : : : | |
| Defendant. | : | |

**REVISED MEMORANDUM**

**April 22, 2016**

**I.   BACKGROUND**

As a preliminary matter, the Court issued a Memorandum and Order dated March 31, 2016 on Defendant's Motion to Compel Arbitration. In response, Defendant filed an unopposed Motion for Reconsideration and/or Clarification of the Court's March 31, 2016 decision. Following a telephonic status conference with the parties, the Court will issue this Revised Memorandum and Order, compelling arbitration as to Plaintiff's individual claims and staying the remainder of the proceedings before this Court.

The factual posture of this case is as follows. On August 18, 2000, Plaintiff Brenda Herndon entered into a Retail Installment Contract and Security Agreement

1

with Chesapeake Mobile Homes, Inc. to finance the purchase of a manufactured home in the amount of $28,007.00.[1] Plaintiff's loan was secured by, among other assets, her new home itself.[2]

The purchase agreement contained a broad arbitration clause. That clause read as follows:

> **ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:**
>
> **a. Dispute Resolution.** Any controversy or claim between or among you [Seller] and me [Herndon] or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if required by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by a judge without a jury, as described below. **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.**
>
> **b. Arbitration.** Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the [AAA] also shall apply. The arbitrator(s)

---

[1] ECF No. 10 at 7.
[2] Id.

2

shall follow the law and shall give effect to the statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice.[3]

In addition to these broad arbitration provisions, the agreement between Plaintiff and Chesapeake also contained a form "Holder Notice" provision, which read:

NOTICE

ANY HOLDER OF THIS CONSUMER CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.[4]

Upon execution of the purchase agreement, Chesapeake assigned the agreement and all of its associated rights under the agreement to GreenPoint Credit, LLC.[5] Specifically, the agreement included the following passage: "For value received, [Chesapeake] hereby assigns to [GreenPoint] all its rights, title and interest in this Contract and the property which is the subject matter hereof and

---

[3] ECF No. 12 Ex. 1 at 7.
[4] ECF No. 12 Ex. 1 at 8.
[5] Id.

authorizes [GreenPoint] to do everything necessary to collect and discharge same."[6] Later, on October 8, 2004, Defendant Green Tree Servicing, LLC, purchased certain GreenPoint's servicing portfolio of manufactured housing loans, which included the loan at issue here.[7]

Thereafter, Plaintiff admits that she "fell behind in her payments."[8] Defendant attempted to collect on Plaintiff's past-due debt pursuant to the terms of the original purchase agreement. Plaintiff thereafter filed a putative class action against Defendant in this Court, alleging violations of the Telephone Consumer Protection Act.

Pursuant to the broad arbitration provisions in Plaintiff's purchase agreement, Defendant sought to compel arbitration of Plaintiff's individual claims and to stay proceedings.[9] Because the arbitration clause in the original purchase agreement is valid and enforceable by Defendant and because it applies to the instant dispute, Defendant's Motion to Compel Arbitration and Stay Proceedings is granted as to Plaintiff's individual claims.

## II. LAW

Defendant seeks to compel arbitration and stay proceedings pursuant to the

---

[6] Id.
[7] Id. at 9.
[8] ECF No. 11 at 7.
[9] ECF No. 8.

Federal Arbitration Act ("FAA").[10] Section 2 of the FAA, which governs the validity of arbitration agreements, mandates that:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

The primary purpose behind the FAA was to dismiss with "ancient judicial hostility to arbitration," and to "ensure that 'private agreements to arbitrate are enforced according to their terms.'"[11] In enacting the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration."[12] Accordingly, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."[13] The FAA "thereby places arbitration agreements on an equal footing with other contracts and requires courts to enforce them according to

---

[10] 9 U.S.C. § 1 et seq.
[11] Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 56 (1995) (internal quotations omitted). Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 682 (2010) (quoting Volt Info. Sciences, Inc. v. Board of Trs. of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989)).
[12] Southland Corp. v. Keating, 465 U.S. 1, 10 (1984).
[13] Volt, 489 U.S. at 475–76.

their terms."[14]

Given this sweeping policy in favor of arbitration, "[a] motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."[15] If "the court determines that an agreement exists and that the dispute falls within the scope of the agreement, it then must refer the matter to arbitration without considering the merits of the dispute."[16] "In making this determination, the court must operate under a 'presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"[17]

Once the court has found that the arbitration agreement sought to be enforced is valid and that the disputed issues falls within that agreement's scope, the court must enter a mandatory stay of the proceedings according to Section 3 of the FAA. That provision states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding

---

[14] Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010).
[15] Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (Alito, J.).
[16] PaineWebber Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990) (Becker, J.).
[17] Id. (quoting AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 650 (1986)) (second internal quotation omitted).

is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

"The purpose of Section 3, in particular, is to guarantee that a party who has secured the agreement of another to arbitrate rather than litigate a dispute will reap the full benefits of its bargain."[18] "Section 3 is drafted to fit the paradigm situation in which a motion for a stay pending arbitration occurs—a plaintiff brings suit on a claim involving an issue it is obligated to arbitrate under an agreement in writing with a defendant and that defendant seeks to stay the litigation pending arbitration."[19] "The defendant is entitled to a mandatory stay of the 'suit or proceeding' in such circumstances providing it 'is not in default in proceeding with such arbitration.'"[20]

## III. ANALYSIS

For the foregoing reasons, Defendant's Motion to Compel Arbitration and Stay Proceedings is granted.

    **A.  Plaintiff's Primary Argument—That The Court May Not Rely On The Text Of The Arbitration Agreement Because Defendant Failed To Attach It To Its Opening Brief—Is Tertiary To The Main Issue, Was Made In Bad Faith, And Is Ultimately Unavailing.**

---

[18] <u>Mendez v. Puerto Rican Int'l Companies, Inc.</u>, 553 F.3d 709, 711 (3d Cir. 2009).
[19] <u>Id.</u> at 712.
[20] <u>Id.</u>

Plaintiff first contends that this Court should discount the existence of the arbitration agreement because Defendant failed to attach an original copy to its opening brief. That is an exceptionally picayune manner in which to begin one's argument. Basing one's case primarily on a technicality evidences to the trier of fact a dire lack of confidence in the true merits of the underlying issue.

Equally as troubling was the revelation that defense counsel had made aware and provided copies of the pertinent agreement to Plaintiff's counsel as a consequence of Defendant's efforts to satisfy Local Rule 7.1, which mandates that parties supply to the Court a certificate of concurrence or nonconcurrence, as appropriate upon the filing of their motion. I therefore cannot consider Plaintiff's primary argument as having been made in good faith.

In any event, Plaintiff proceeded to acknowledge the existence and the contents of the agreement despite her preliminary objections. In that manner, her evidentiary objection amounted to nothing more than a distraction from the Court's point of view. To that end, Defendant was rightly able to cure any purported evidentiary deficiencies in its papers simply by attaching copies of the agreements to its reply brief. Plaintiff's evidentiary objection effectively made a lot of fuss about nothing. For future reference, this Court would advise the parties to compare their relationship with the judges before whom they appear to that of a "credibility" bank account. By the time I reached the merits here, Plaintiff's counsel was already

perilously close to bankruptcy.

> **B.   Defendant Has Demonstrated The Existence Of A Valid Arbitration Agreement That Applies To The Instant Dispute, Thereby Requiring This Court To Compel Arbitration And Stay Any Further Proceedings.**

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement."[21] A valid agreement to arbitrate exists here. The parties do not dispute that. What is disputed, however, is the extent to which this dispute falls within the scope of that agreement given Defendant's position as a nonsignatory to that document. As the law would have it, Defendant may step into the shoes of its predecessor-in-interest and enforce the agreement to arbitrate as against Plaintiff.

The Arbitration Clause at issue provides as follows:

> **ARBITRATION OF DISPUTES AND WAIVER OF JURY TRIAL:**
>
> **a. Dispute Resolution.** Any controversy or claim between or among you [Seller] and me [Herndon] or our assignees arising out of or relating to this Contract or any agreements or instruments relating to or delivered in connection with this Contract, including any claim based on or arising from an alleged tort, shall, if required by either you or me, be determined by arbitration, reference, or trial by a judge as provided below. A controversy involving only a single claimant, or claimants who are related or asserting claims arising from a single transaction shall be determined by arbitration as described below. Any other controversy shall be determined by judicial reference of the

---

[21] Trippe, 401 F.3d at 532.

9

controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by a judge without a jury, as described below. **YOU AND I AGREE AND UNDERSTAND THAT WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE SHALL BE NO JURY WHETHER THE CONTROVERSY OR CLAIM IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE.**

**b. Arbitration.** Since this Contract touches and concerns interstate commerce, an arbitration under this Contract shall be in accordance with the United States Arbitration Act (Title 9, United States Code), notwithstanding any choice of law provision in this Contract. The Commercial Rules of the [AAA] also shall apply. The arbitrator(s) shall follow the law and shall give effect to the statutes of limitation in determining any claim. Any controversy concerning whether an issue is arbitrable shall be determined by the arbitrator(s). The award of the arbitrator(s) shall be in writing and include a statement of reasons for the award. The award shall be final. Judgment upon the award may be entered in any court having jurisdiction, and no challenge to entry of judgment upon the award shall be entertained except as provided by Section 10 of the United States Arbitration Act or upon a finding of manifest injustice.[22]

In addition to these broad arbitration provisions, the original agreement between Plaintiff and the original seller of the manufactured home also contains a form "Holder Notice" provision, which reads:

NOTICE

ANY HOLDER OF THIS CONSUMER CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE

---

[22] ECF No. 12 Ex. 1 at 7.

DEBTOR HEREUNDER.[23]

In contrast to these clear textual provisions, Plaintiff's primary contention as to the applicability of the agreement is that Defendant may not seek to enforce the arbitration provision because it was not an original signatory to the document. Predictably, this case is not the first time that the nonsignatory issue has arisen in the contractual context. In fact, it is not even the first time the issue has arisen involving similar arbitration clauses sought to be enforced by Defendant here. Instead, a clear path of legal precedent permits Defendant to exercise those rights and remedies that its predecessor-in-interest bargained for during the agreement's formation.

"Ordinary principles of contract and agency law may be called upon to bind a nonsignatory to an agreement whose terms have not clearly done so."[24] Applying ordinary principals of contract law to a very similar arbitration agreement, the United States Court of Appeals for the Fifth Circuit in Sherer v. Green Tree Servicing LLC held that Green Tree was able to compel arbitration even though it had not been a signatory in the first instance.[25] "Indeed, without the Loan Agreement, there would be no loan for Green Tree to service, and no party argues

---

[23] ECF No. 12 Ex. 1 at 8.
[24] Sherer v. Green Tree Servicing LLC, 548 F.3d 379, 382 (5th Cir. 2008)
[25] Id.

to the contrary," the Fifth Circuit noted.[26] Importantly, in Sherer, the Plaintiff's claims arose "from Green Tree's conduct as Sherer's loan servicer" and therefore fell "within the terms of the Loan Agreement's arbitration clause."[27] The court therefore concluded that the plaintiff "ha[d] validly agreed to arbitrate with a nonsignatory, such as the loan servicer Green Tree."[28]

The plain text of the arbitration clause here mimics that found in the Sherer case. "Any controversy or claim between or among you [Seller] and me [Herndon] or our assignees" is subject to arbitration here, so long as the dispute "aris[es] out of or relat[es] to" the initial purchase agreement. The instant dispute is covered by that broad language. It is a claim between Herndon and an assignee of the originating institution, and it clearly has arisen from the purchase agreement. Thus, were the dispute only between Plaintiff and Chesapeake, this would be a rather straightforward case, but as it turns out, that the dispute is now between Plaintiff and Chesapeake's successor-in-interest makes little difference.

In discerning whether Defendant may step into the original seller's shoes as its assignee or successor-in-interest, the parties seem to dispute the state contract law applicable to this dispute. The Court is unconvinced that application of the law of Maryland rather than that of Pennsylvania makes much difference here;

---

[26] Id.
[27] Id.
[28] Id.

nevertheless, as Defendant correctly points out, the purchase agreement contains a Maryland choice-of-law provisions, and so that is the law to which the Court must turn.[29]

"Under Maryland law, an agreement to arbitrate disputes is enforceable if it is a valid contract."[30] Accordingly, federal courts interpreting Maryland law have held that where one party "is the assignee" as to "[another party's] debt," an arbitration clause that covers "subsidiaries, affiliates, agents, employees, predecessors in interests, successors, and assigns" is sufficient to permit an assignee, such as a collection agency, to compel arbitration of an action arising out of debt collection.[31] This result is unavoidable because "an assignment transfers all of the assignor's rights and interests to the assignee."[32] For instance, an "assignee of a mortgage loan agreement [can] invoke [the loan agreement's] arbitration clause."[33] Thus, Maryland law permits a seller's assignee to invoke the original sales agreement's arbitration clause.[34]

---

[29] See, e.g., Gay v. CreditInform, 511 F.3d 369, 389 (3d Cir. 2007) ("Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them.").
[30] Grant-Fletcher v. Collecto, Inc., No. CIV.A. RDB-13-3505, 2014 WL 1877410, at *5 (D. Md. May 9, 2014).
[31] Id. at *5.
[32] Rota-McLarty v. Santander Consumer USA, Inc., No. CIV. WDQ-10-0908, 2011 WL 2133698, at *4 n.15 (D. Md. May 26, 2011) (citing James v. Goldberg, 256 Md. 520, 527, 261 A.2d 753, 757 (1970)).
[33] Rota-McLarty, 2011 WL 2133698, at *4 n.15 (citing Walther v. Sovereign Bank, 386 Md. 412, 418, 450, 872 A.2d 735, 739, 758 (2005)).
[34] Rota-McLarty, 2011 WL 2133698, at *4.

Plaintiff contends that she could have never surmised that a debt servicer such as Defendant here would ever be party to the arbitration agreement when she signed it. Instead, Plaintiff argues that the agreement could only ever be operable between herself and other mobile home companies—the closed universe of parties from which she could ever subjectively foresee drawing an assignee to Chesapeake. That is a strained argument. When Plaintiff agreed to arbitrate "any controversy or claim . . . arising out of or relating to" the purchase of her manufactured home, any reasonable purchaser would have understood the scope of such an agreement to extend to debt collection upon default of the purchase agreement's terms. As one other court has observed in a similar action, "Indeed, it is difficult to understand how Green Tree could be a servicer if there were no Note, and more importantly, how Green Tree could face statutory servicer liability if there were no Note to service. In light of this conclusion and strong federal policy favoring arbitration, it is appropriate to compel arbitration of the [Plaintiff's] claims."[35]

In addition, Plaintiff cites to law suggesting that an assignee should be unable to enforce a given contractual provision if enforcement of that provision post-assignment would work a "material change" on the existing party's duties. The Court perceives no "material change" having taken place when a purchase

---

[35] Blinco v. Green Tree Servicing LLC, 400 F.3d 1308, 1311 (11th Cir. 2005).

agreement is assigned to a servicing agency. Quite the opposite, as Plaintiff herself characterizes the legal transaction here, "substitution of a new party as holder of the right" precisely suggests that if the original party had the right to enforce the agreement to arbitrate in an effort to collect past due payments, then the existence of such a right now belongs to the Defendant.[36]

Plaintiff suggests to the contrary that her "risk with respect to the agreement significantly and materially increased" post-assignment.[37] She essentially claims that she was purchasing a home—legally, financing the purchase of a home via a security agreement—but did not foresee the prospect of debt collection following past due payments. That argument strains credulity. To illustrate, Plaintiff suggests that such momentous changes in her contractual obligations stem from her having to deal with "a new company" that operates under "new policies and procedures." If those changes were sufficient to engender a material hardship, then nearly every commercial assignment would work a material change, rendering the terms of just about any commercial agreement unenforceable. That rule would result in an inefficiently low number of assignments occurring naturally in the marketplace.

Further, one might argue that Plaintiff's duty has not changed at all, let alone in a material fashion. Under that contention, a contention to which Defendant hints, Plaintiff's sole duty under the agreement was to make her payments on time,

---

[36] ECF No. 11 at 17.
[37] Id. at 18.

regardless of the identity of the loan's ultimate servicer. Under that characterization of the relationship, whatever changes the assignment might have on the collection process should be immaterial to Plaintiff's continued obligation to repay her debt. At no time, for instance, does Plaintiff contend that the assignment ever accelerated her payments, altered her interest rate, or effected any other change on her payment schedule or amount due. Suggesting that a mere substitution of mortgage servicers causes a material change in a purchase agreement leads this Court toward murky water into which it would rather not tread.

## IV. CONCLUSION

Because the arbitration clause in the original purchase agreement is valid and enforceable by Defendant and because it applies to the instant dispute, Defendant's Motion to Compel Arbitration and Stay Proceedings is granted and so clarified.

An appropriate Order follows.

BY THE COURT:

s/ Matthew W. Brann
Matthew W. Brann
United States District Judge